LOTTINGER, Judge.
This is a tort action brought by the plaintiff, individually and as natural tutrix of the minors, Merlin C. Stansbury, Jr. and Deborah Mary Stansbury, for damages for the death of her husband, Merlin Stans-bury, who was electrocuted on July 12, 1949, while engaged in painting the home of Mrs. Luke Grizzaffi in Morgan City, Louisania. Joined as defendants are the Mayor and Councilmen of Morgan City and Mrs. Luke Grizzaffi, the owner of the home which the decedent was painting.
The petition alleges negligence on the part of Mrs. Grizzaffi in failing to furnish a safe place to work and in failing to either point out or correct the alleged defective wires connected to her home. The mayor and councilmen of Morgan City-are alleged to be the owners and operators *160 of an electric line system in Morgan City and negligence is charged for having exposed or uninsulated wires connected to the house, and in failing to exercise proper supervision over the alleged defective wiring.
An exception of no cause or right of action filed on behalf of Mrs. Grizzaffi was sustained by the trial judge.
The other defendant, the mayor and councilmen of Morgan City, Louisiana, answered averring that its electric wires from the pole line to the Grizzaffi home were extended and connected in an approved and workmanlike manner. In the alternative it was pleaded that the decedent’s death was caused by his own negligence ■ in failing to use ordinary care and precaution in painting around the wires where they entered Mrs. Grizzaffi’s house. Following trial on the merits, the case was dismissed and the matter is now before us on an appeal taken by the plaintiff.
The record contains no seriously disputed issues of fact. The decedent’s death and his relationship to the plaintiff and her minor children are all admitted. The record shows that for several days previous to July 12, 1949, the decedent had been engaged in painting the home of Mrs. Grizzaffi and that on the morning in question he was painting the upper front portion of her home. He had placed a fifteen-foot ladder to the left of the defendant’s electric wires with the foot of the ladder resting about four feet from the foundation of the home, in order to continue his painting of the upper front part of the house around the electric wires. At about 9:00 o’clock A.M. his body was found at the foot of the ladder and Dr. S. J. Russo, upon being called to the scene, pronounced Stansbury dead and summoned the coroner. There were no persons who saw him either move the ladder or fall from same, nor was there anyone who testified as to •having seen either the. ladder or the decedent himself come in contact with the wire. While some attempt was made to show that the decedent’s death was caused not by electrocution but by the fall itself, it is safe to say without going into unnecessary detail, that the record clearly substantiates that the decedent’s death was caused by electrocution. Dr. Russo and Dr. F. H, Metz, acting coroner, both testified that Mr. Stansbury had first and second degree burns on the right forearm caused from electricity and that most of the burns were on the under arm and armpit.
The first question presented then, as we see it, is that of negligence, if any, on the part of the defendant in allowing the wires which entered the home to be exposed rather than insulated. From the evidence and the photographs introduced into the record, it is clear that the wires were attached to the house at the eave on the righthand side thereof. Mr. Joseph Cefalu testified that they were some ten feet above the ground, and his testimony in this line is confirmed by that of two other witnesses. There is no testimony tending to show that they were in any way concealed and it is evident that they, and their condition, were very visible to anyone. The closest authority which we can find concerning a situation similar to the one at bar is the case of Calton v. Louisiana Power & Light Co., 56 So.2d 862, which was affirmed by the Supreme Court in 222 La. 1063, 64 So.2d 432. That matter involved the electrocution of a man which resulted when the boom on a log-loader came into contact with defendant’s high-voltage electric line. Negligence was charged against the defendant in allowing its line to remain at an insufficient height when it knew or had reason to know that the sawmill in the vicinity used log-loaders with booms of sufficient height to come into contact with same. The court, after reviewing the authorities on the subject, concluded that there was no negligence on the part of the defendant.
The above authority, we think, is controlling here. The plaintiff failed to show that either the height of, the wire or the condition of the wires generally was in violation of any rules or regulations of any governing body and has pointed out to us no statute of this State pertaining to same. Several witnesses testified with respect to *161 the accepted practice with regard to wires entering residences and we do not think that any of the testimony- so offered shows or tends to show a deviation on the part of defendant from these standards. •
Assuming for the - sake of argument that the defendant may have been negligent in some respect, we are still of the opinion that the cause of death of the deceased was his gross negligence and carelessness in painting under and around the electric wires which contributory, negligence would bar plaintiff’s recovery. As stated hereinabove the electric wires servicing the home of Mrs. Grazzaffi were permanently-attached'-to said building and were visible to anyone. It is likewise evident from the photographs as introduced-in evidence, which were taken 'just a- short while after the accident, that the said wires were unbroken and intact. Therefore the only way that the deceased could have come in contact with these wires was for him to have carelessly and negligently and unnecessarily touched or come in contact with same. The deceased- was a man twenty-four years , of age, was married and had two children and-had been a painter for more than two years. In- this age of mechanical and electrical devices it may be assumed that a man of - the age and experience of the deceased must have known ■of the danger of wires carrying electricity and should have exercised more care and precaution in pai-nting under and- around such wires. It is evident from the photographs introduced that the top of the ladder and the paint bucket which was attached to the ladder which the deceased was using on the fatal morning was right under a small unpainted portion of the front of the home of Mrs. Grazzaffi and is just immediately adjoining a set of electrical wires. It is likewise evident from the said photographs that the deceased -could have painted the unpainted portion without touching said wires or coming in ■contact with same. It is likewise evident that he could have re-arranged his ladder to paint said portion to avoid coming in -contact with said wires. If is likewise evident from the evidence as found in the record that the deceased could have requested the defendant City of Morgan City to disconnect said electrical current running'to said home if he so desired or if he deemed it necessary. Be that as it may however, it is evident that he failed to do either óf these things but' proceeded to paint the said unpainted portion in the way he did, thereby negligently and unnecessarily exposing himself to said danger.
We believe what was said by the late Chief Justice O’Niell of the Supreme Court in the case of Bouchon v. New Orleans Ry. & Light Co. in 154 La. 397, 97 So. 587, 588 is appropriate here:
“Bouchon had had eight, years of experience at painting houses. He knew that electric light wires were dangerous. And he knew that’ the wire was. there. A few minutes before the accident, ^ a man. in the third story of the -building across the street called out to him and warned him of the danger of the- wire, and he voiced his indifference with the eloquent answer, ‘Damn the wire.’ There is no dispute that, with any care or prudence at all, he could have avoided the accident. ' No reason could be given for- rejecting the’ doctrine of contributory negligence in this case.”
We can paraphrase the last two sentences of the above by saying there is no dispute that, with any care or prudence at all, the deceased in this case could have avoided the accident. No reason can be given for rejecting the doctrine of contributory negligence in this case. 'The trial judge was evidently of the opinion that the plaintiff failed to prove negligence on the part of the defendant or that the deceased had committed contributory negligence and a review of the record fails to show any manifest error in his conclusions.
For the reasons assigned, the judgment appealed from is affirmed.
Judgment affirmed.